vs. Hamburger, Mr. Zager. May it please the court, Eric Zager for the appellant and plaintiff Jan Donnewell. In this case the district court disregarded the facts alleged in the complaint and drew conclusions that cannot be reconciled with the facts alleged. The district court first held that it was reasonable to assume that the compensation committee had the authority to make grants under the 2003 plan, even though the plan vests granting authority exclusively in the plan committee, which at the time did not exist. There was no plan committee. What the court did was to imply a term that did not appear on the face of the plan, and that is precisely what the Delaware cases say the court should not do. And of course this case is governed by Delaware law. The next major error was that the court, in considering the grant that was made in December of 2012, which we allege in the complaint repeatedly was made in December, and the defendants in fact acknowledged was made in December, but the court said it was made in August. That was simply a mistake. It was not. What the court did was to accept defendants argument that the December grant was not actually a new grant, but rather the quote-unquote fulfillment of the August grant. But that not only contradicts our pleading, it also contradicts defendants public disclosures, which say that the excess grants from August were null and void. So there was nothing that could be fulfilled in December. And furthermore, there is nothing in the 2003 plan that permits fulfillment of a grant made under a different plan. Taking the facts as issue are clear and unambiguous. The violations are clear and unambiguous, and under clear Delaware law, demand is excused and the complaint should not have been dismissed. The 2003 plan, which is the one at issue, vests granting authority only in the planned committee, not the compensation committee. But there was no planning committee. Exactly. So couldn't they substitute, what, the compensation committee? No, Your Honor. That means that nobody has the authority to make a grant. Well, why not? I don't understand. Because... What's the point? The point is... One committee isn't available, so they switch it to another. That's not the way Delaware law works, Your Honor. Why not? Because this is a stockholder approved plan. The Board of Directors had to get authority from the stockholders to approve this changes can be made, the plan can be amended, but only by the planned committee. Are the stockholders better protected by a planned committee that worked for the fellow, for Hamburger, or by the compensation committee of independent directors? In my opinion, they would have been better off giving the granting authority to the compensation committee for whatever reason they did not do that, and Delaware law is very clear that you can't imply a term that doesn't exist. Can I, well, the whole thing looks like a mulligan to me. Well, that's the way that defendants were characterized. In your complaint, counsel, you quoted a disclosure, yeah, the 2013 proxy, saying that the matter was investigated by a quote, cross-functional debris working group advised by external counsel and working in coordination with debris external auditors all under the oversight of the compensation committee. Do you disagree with anything in that statement? I have no basis to disagree with their description of what happened, no. Okay. Does it matter that they were advised by external counsel and by external auditors on, in essence, whether the relevant plan documents provided this flexibility to, for a mulligan? At trial, it may matter. That may be defense they could raise at trial. On a motion to dismiss on the demand futility issue, that's not relevant at all. Not relevant to futility? No, your honor. Delaware law says that if the plaintiff alleges with particularity that the directors violated a clear and unambiguous provision of a plan, that excuses demand. Whether they have a defense to liability later on because they got advice from judicial law. It's judicial. There are a number of Delaware decisions that we quote in our brief. Have they ever had a case like this where it clearly was in the stockholders interest to have the compensation committee rather than the planning committee, non-existent planning committee, decide the issue? Not on this precise factual issue, but there have been a number of cases, including the case that sort of started all of them, which is Sanders v. Wang. In Sanders v. Wang, the issue was that the stock had split, and the committee in that case assumed that that also split and doubled. It was a two-for-one split. That that also doubled the number of shares they could give out as options, which is a perfectly reasonable assumption, except that's not what the plan said. And the court in Sanders v. Wang said the plan doesn't say you get to double the number of options. That's not a similar case. So you're saying that Delaware law or that it never permits a deviation from a plan? That's what I'm saying, Your Honor, and the case law bears me out. Well, that's mindless, right? Excuse me? That's mindless. No, I don't think it's mindless. Well, it's mindless in this case. Respectfully, Your Honor, I don't think it is. Why? Because Mr. Hamburger ended up with... Can't the independent directors be accredited? I mean, they are independent. Or are they not really independent? Are they tools of Hamburger? No, Your Honor, we don't make that allegation, but... But if they're independent and they go along with this, as Judge Hamilton said, why isn't that better than if it had been the planning committee appointed by Hamburger? Well, where do you draw the line, Your Honor? If the plan says you can only give out a million options and they, in their independent judgment, say you should give out two million... I don't understand. When courts interpret statutes, interpret rules, and so on, and certainly when they're doing, you know, common law, they usually try to be sensible rather than mechanical. I agree, Your Honor, but I, in this case, it is sensible to make... Why is it sensible? Because the plan says what it says and you can't... No, that doesn't make it sensible, because the plan may say what it said because it didn't anticipate the situation. I think it did anticipate the situation. Well, the general idea, I thought, was, in essence, that where an agent is empowered to act, the principal can also act. Correct. I mean, that's the argument being made by the defendants, and I thought that for you to prevail on excusing demand, you'd have to convince us that there's just no way anybody could accept that argument, that it's just beyond the pale, right? Not exactly, Your Honor. With respect to the agent-principal argument, the principal, in this case, is not the compensation committee. It's the entire board, and there's no allegation that the entire board did anything here, so that's not the issue, but forget the plan committee argument for a second. Focus on the second argument about the price of the options. You know, that's the Mulligan problem, right? I mean, they meant to give him the stock options back in Apparently, it was a heck of a end of the year for the stock, right? Yes. It went up pretty dramatically, and so out of, what, a sense of charity or more a sense of honor that we wanted to do this right, we blew it, we'll try to fix it as best we can, they gave him the benefit of the August price. That's what, that's their this kind of in the context of, let's say, a lower-level employee, maybe just a sales rep, for example, or one of the admissions reps for DeVry who has promised a bonus and acts on that promise, has a great last six months of the year, and then the company realizes, oh, we screwed up, we didn't actually implement this, but we're going to honor our promise anyway because we know you relied on it. I frankly have a lot of sympathy for that kind of an argument. As would I, Your Honor. And why is this different? There were other ways they could have made it up to him if they wanted to. They could have paid him cash, they could have paid him options next year. Why would that, why would those be any better for you? Because they wouldn't violate the plan. You just, hey, this case just turns on a technicality. It does, Your Honor. I don't dispute that it does, but it's an important technicality, and it's one of the Delaware courts. No, it actually isn't important. Well, the Delaware courts think it's important. In fact, the way you know, adherence to technicalities can yield very dumb results. So adherence to technicalities is not the best feature of the American judiciary. I can't disagree with that, Your Honor. It all depends. Could the suit have been brought in Delaware? It could have. In the judiciary court, it would have had jurisdiction. Wouldn't that be a better place for it? Arguably, but the District Court of Illinois also had jurisdiction. Okay, well, thank you. Thank you very much, Mr. Zager. Ms. Oterizzi? May it please the Court, Michelle Oterizzi for the defendants. This is an extremely technical case, as Your Honor pointed out, and I think when you're going to look at what are the standards that Delaware has applied under demand futility, because the question you're asking yourself here is whether a majority of the DeVry board could be trusted to make a proper business judgment in response to a demand. And under the Aronson case, the Delaware courts apply a two-pronged analysis. The first one is, is a majority disinterested and independent, and there's no question that here Mr. Hamburger is the only insider on the board. All the rest of them are outside. Plaintiffs don't allege that they're interested or that they were dominated by Mr. Hamburger. The second prong is, was the business judgment they made in doing the mulligan here, was that the product of a valid business judgment, or were they acting in bad faith? And there's a presumption under Delaware law that where you're independent and disinterested, that you were in fact acting honestly, and it's a product of a valid business judgment. And in fact, to hold these people liable, you would have to show that they were acting in bad faith. And so ordinarily, Delaware courts say you can't look at the substance of the decision. Instead, you look at the process by which it was made. So Delaware on demand for utility is all about process. There's no challenge to the process here. Now there is a narrow exception that has been applied in cases where people blow a clear numerical provision in a shareholder plan, in a stock plan, shareholder approved plan, where courts have said, if it's so clear and unambiguous that you violated the terms of the plan, then we can infer that you knowingly and deliberately violated the plan, you were acting in bad faith. And then demand is futile. But those cases are not like this one, because in those cases, there is no defense. You blew the 150,000 share limit in those cases. And it's absolutely clear, and the courts have basically said, if you read the plan, there's no explanation for what you did, other than you deliberately violated it. Here, we don't have anything like that, because you have a situation where it is nine years after this 2003 plan was enacted. You could technically have a plan committee. The plan committee is made up of employees who are directors. That's Mr. Hamburg. So he obviously can't make this decision. It's about his own compensation. He's conflicted. The plan documents specifically say that the authority to manage and control the operation and administration of the plan is vested in the plan committee, subject to the approval of the compensation committee. And they also specifically say that if you give any award under this plan to an employee, the compensation committee has to approve it. And that's a provision that's in there, because it is the compensation committee who makes decisions about the compensation of your high-ranking executives, and particularly your CEO. It's also in there because that's what you have to do to get a tax deduction for this. We pointed out in our brief, under Section 162M, compensation from a publicly traded company that's over a million dollars that goes to your CEO is not tax deductible, unless it's performance-based. And it has to follow numerous rules. And to do that, one of the first things you have to do, you have to have a shareholder-approved plan. And when you're talking about equity, awards like this, they have to be approved by the compensation committee. Now, we raised that argument below in the district court. The plaintiffs chose not to respond to it in their opening brief. We raised it again in our brief. In reply, they respond to it for the first time, and they say that's not what the statute says. It may not be precisely what the statute says, but it is what the internal revenue regulations say. And I would cite, Your Honors, to that regulation, which is 26 CFR 1.162, after the statute, dash 27, subsection E, subsection 2, Romanet 6. And it says what you have to do, I know, Your Honor. It says you have to do three things to be able to deduct a stock option. One is it has to be approved by the compensation committee. Two is you have to have a limit on the number of shares that can be awarded in any period. And three is, basically, it has to be at fair market value, so that after that based. It's based on the performance of the stock. Ms. Oterizzi, I'd like to ask you about this issue about advice from external counsel, auditors. I understood plaintiff's counsel, I'm not sure I got it right, but I understood him to say that that does not matter under Delaware law at the point where we're evaluating demand futility. Is that right? It ordinarily matters very much, Your Honor, because usually it's process. Could you direct us to case law, and if Mr. Zagars can do so as well, I'd appreciate it on that point. Yes, Your Honor. I think we cite in our brief the cases that say that ordinarily you don't deal with substance, you deal with process. And those are the cases that I would cite to deal with that specifically. The Dow chemical case, for example, I think is a good site for that. It's a chance report decision, but we cite other cases in our brief as well. So ordinarily process matters very much, and here there's no claim that the process was bad. Instead, they're trying to get within this very what you did under a shareholder plan. And it looks like you deliberately and knowingly violated the terms of the plan, then we're going to say you were acting in bad faith. There's an inference of bad faith in that situation, which meets the second Aaronson prompt. But very unusual, no case that even resembles this one, where there is a reasonable way to infer that in this plan there's an argument under the plan that the Compensation Committee could do it. And the same is true for the question of options backdating. Yes, under the 2005 plan, any options granted in excess of the $150,000 option limit were ineffective. But that didn't void what the Compensation Committee did in August. The Compensation Committee made a decision that they wanted to give Mr. Aaronson a limit of compensation, including a certain amount of options as of that date. And that didn't disappear just because you couldn't fulfill it from the 2005 plan. And so the way we've conceptualized it is they had two buckets. They had the 2003 plan, the 2005 plan, and they took too many out of the 2005 plan initially. In December, after this is called to their attention, they say, we're going to fix it, and they take some out of the 2003. And their tenure options from August of 2002, they're at the strike price of 2002. So they're just conceptualizing it as fulfilling it from a different plan. It sounds as if the federal tax law makes taking a mulligan considerably more complicated than on a golf course. It may be, Your Honor. But I think, I mean, we cited in our brief, the SEC's chief accountant, you know, has indicated that once you finalize the terms of the grant, if you're trying to figure out what date you use for the strike price, it should be the time when it's finalized. And here it was finalized in August. So we think that supports it too. But the question, for Your Honors, is not, was the board right? It is, did they do something that was so far off the reservation that you could look at them and say, they acted in bad faith, that an inference arises that they acted in bad faith, and they just didn't make it here. So therefore, the judge was absolutely right that they should have been required to make a demand, and the case gets dismissed until they do. What does DeVry do? DeVry, it has educational institutions, Your Honors, for-profit educational institutions. There is a DeVry around the corner from us. Now this, the plaintiff's brief is captioned as if this were a class action. Is it? No, it's derivatively on behalf of DeVry. Well, it says on behalf of all others similarly situated, and derivatively. It wasn't clear to me that it was two different types of people. Your Honor, there was a class action claim here. It was a proxy fraud claim that related to the initial problem, but that was dropped long ago. It dropped. Yes. Okay, well thank you, Ms. Arterisi. Mr. Zagar, anything further? I'd like to pick up on Judge Hamilton's mulligan analogy. What happened here is, in a sense, a mulligan. But on the golf course, if your original shot was from 200 yards away, you don't get to move up 50 yards and hit your mulligan from 150. That's what they did here. And, you know, the argument they're making is, well, that's not what we meant to do. You know, our original shot went awry. That's not what we meant to do. So we should be able to use our original ball and put it where we meant the ball to go. That's not how mulligans work. If you start over, you start over, and you use a new ball, and in this case, they're saying, we want to use the same price that we originally meant, but we messed that up, so never mind. We'll do it anyway. It's a very bad analogy. My apologies to all of us. Because you screw up the golf game, right? Right. But you don't do any harm when you allow this adjustment. Well, except you do, because now when he exercises the options, he pays $6 per share less than he should. So he's costing the company $6 a share for every option that he is going to exercise. But he would have had that. I mean, if there had been a planning committee, he would have had that. No, Your Honor, this is separate from the plan committee. Even if there were a plan committee, even if the compensation committee had the authority, the pricing element is a completely separate violation. That's, again, very clear. The plan says you must grant at the price on the day you make the grant. And when they say, well, it's not really a new grant, well, yeah, it really is a new grant. I see. OK. OK, well, thank you very much. Thank you, Your Honor.